UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-288 (GK) |
| | : | |
| v. | : | |
| | : | |
| DAVID JOHNSON, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant David Johnson.

**I.  FACTUAL BACKGROUND**

On October 12, 2005, the defendant pled guilty to a one count Indictment charging him with aiding and abetting receipt of bribes by a public official, in violation of 18 U.S.C. § 201(b)(2)(A) and (C) and § 2.

As agreed to by the defendant and set fort in the Statement of Offense and the Presentence Investigation Report ("PSR"), at pages 5-6, at all times material to the Indictment, the Office of Finance and Treasury ("OFT") was an office under the District of Columbia Office of the Chief Financial Officer.  The mission of OFT was to manage the assets and liabilities of the District of Columbia government.  The Treasury Operations Unit was part of the OFT.  That Unit was responsible for receiving and collecting receipts due the District of Columbia government. The Unit also deposited monies collected, and provided cashiering and related services to other agencies and departments, as dictated by the needs of the District of Columbia government.  District of Columbia offices for which OFT Treasury Operations Unit provided

cashiering support included, among others, the Bureau of Traffic Adjudication ("BTA").

Persons who have been fined for various traffic or parking violations could pay those fines in person at the BTA office. OFT employed tellers worked at the BTA office located at 65 K Street, N.E., Washington, D.C., whose job it was to accept payment of the fines, by cash, check, or credit card. Those fines were recorded in a computer system maintained by OFT (the "OFT system"). Once the fines were paid, the individual's Department of Motor Vehicles ("DMV") record, reflecting the parking or traffic violations, was cleared.

Co-defendant Tonette Cooks was employed by the District of Columbia OFT. For the majority of the time she worked for OFT, she was assigned to the Treasury Operations unit as a teller for the BTA at 65 K Street, N.E.. As of June 2003, Cooks had been employed with that office for 3 ½ years and was a well-trained and experienced teller.

Defendant knew Cooks from the neighborhood in which they both lived in Washington, D.C. Since at least in or about June 2002, until Cooks' termination upon her arrest on August 7, 2003, Cooks and defendant were involved in a bribery scheme whereby Cooks manipulated the OFT computer to clear unpaid fines for parking and traffic violations out of the DMV system, without an actual payment of money to the D.C. Treasurer. Instead, cash bribes were accepted by Cooks and defendant, acting as a middleman, from various customers as payment in full for these fines. The customers were given computerized printouts, purportedly as receipts which falsely indicated that the fines had been paid in full. Defendant operated as a "middleman," securing "customers," collecting their bribe payments, paying a portion of these bribe payments to Cooks and retaining a portion for himself, and otherwise facilitating the transfer of information regarding the "customers'" tickets and the return to them of receipts.

As a result of information obtained from a variety of sources, in the Spring and early Summer of 2003, the Federal Bureau of Investigation (FBI), in concert with Office of the Inspector General for the District of Columbia initiated an investigation into the activities of OFT tellers and others assisting them in taking bribes. As part of the investigation, undercover FBI agents, acting as individuals willing to pay money to have tickets expunged, met with Cooks and others. Cooks met with the undercover agents on several occasions and accepted bribe payments in exchange for making false entries in the computer system and producing receipts which indicated that traffic fines had been paid in full.

FBI agents interviewed defendant on October 24, 2003. Defendant admitted to the agents that he worked as a "go-between" for Cooks. Defendant stated he lived in an apartment next to Cooks and would often meet Cooks near her residence to provide her with money to erase customers' traffic fines. He stated he met with her on average of three to four times per week to provide her with names and money, in exchange for her clearing the fines from the customers' records. Defendant stated that he payed Cooks varying amounts for clearing each customer's record, *e.g.*, $300, $400 or more. Further investigation, including interviews with "customers," and analysis of DMV computer files and defendant's and Cooks' cell phone records, confirmed the duration and extent of defendant and Cooks bribery scheme.

The loss amount attributable to the bribery scheme carried out by defendant and Cooks amounted to more than $30,000.[1]

---

[1] On November 15, 2005, Ms. Cooks was sentenced by the Court after she pled guilty to accepting bribes in exchange for fixing tickets. She was sentenced to eighteen months of imprisonment.

## II. UNITED STATES SENTENCING GUIDELINES

The United States Sentencing Guidelines, § 3E1.1, provides for a two-level decrease in a defendant's offense level for acceptance of responsibility, and, upon motion of the government, for a defendant whose level is 16 or greater and who has in a timely manner advised the government of the defendant's intent to plead guilty, an additional one-level decrease. The defendant meets the criteria for a three-level decrease and the government hereby moves that he be given a three-level decrease in his offense level for acceptance of responsibility.

The probation officer believes, and the United States concurs, that the defendant's total offense level, incorporating the three-level decrease for acceptance of responsibility, is fifteen, his criminal history is I, and his guideline range is 18 to 24 months of imprisonment. PSR, at pages 7-8 , ¶¶ 23-33, and page 14, ¶ 66. According to the PSR, the defendant presently falls within Zone D of the Sentencing Table. Id., at page 14, ¶ 72. A Guidelines sentence in Zone D requires a sentence of imprisonment. Id.

In addition, restitution in the amount of $30,000 is owed by the defendant to the D.C. Treasurer.

## III. IMPACT OF U.S. v. BOOKER ON THE SENTENCING GUIDELINES

There are no facts involved in the calculation of defendant's sentence under the United States Sentencing Guidelines to which defendant did not admit in his guilty plea in this matter. Accordingly, there are no Sixth Amendment concerns in the calculation of his sentence under those Guidelines. However, the Supreme Court has now held that the Sentencing Guidelines are no longer mandatory. Nevertheless, for the reasons set forth below, the government requests that the Court use the Sentencing Guidelines in determining the sentence of defendant in this case.

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). In consequence, the Court invalidated the statutory provision that made the Guidelines mandatory: Title 18, United States Code, § 3553(b)(1). <u>Booker</u>, 125 S. Ct. at 756; <u>United States v. Price</u>, 409 F.3d 436, 442-43 (D.C. Cir. 2005). However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as a benchmark for informing courts as to what would be a reasonable sentence for a particular defendant who has committed a particular crime. The sentence will then be subject to review by courts of appeals for "reasonableness." <u>See</u> <u>Booker</u>, 125 S. Ct. at 766; <u>Price</u>, 409 F.3d at 441, 442.

In <u>Booker</u>'s wake, this Court must continue to resolve disputed questions of fact and law in order to calculate correctly a defendant's sentence under the existing Sentencing Guidelines. <u>See</u> Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." <u>Booker</u>, 125 S. Ct. at 767 (citing 18 U.S.C.A. §§ 3553(a)(4)&(5) (Supp. 2004)). <u>See</u> <u>Price</u>, 409 F.3d at 442-43. In light of this mandate, it is plain that a sentence within the Guidelines, while not required, is presumptively reasonable. Not only is a sentence within the Guidelines range presumptively reasonable, it also accommodates the salutary goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the

country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in Section § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See United States v. Price, 409 F.3d at 442 (listing the factors that guide sentencing).

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practices and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Commission, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker,

6

125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Every Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 ("Congress' basic statutory goal – a system that diminishes sentencing disparity – depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity"). Since the Guidelines represent the only extant benchmark to encourage uniformity and thus the only tool to implement the Congressional vision of sentencing uniformity and fairness, Guidelines range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have accompanied the failure to sentence a defendant within the Guidelines. Such a sentence will now be reviewed instead for its "reasonableness." See id. at 766; Price, 409 F.3d at 441, 442. Nevertheless, the Guidelines – resulting as they do from years of study of sentencing practices,

7

crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. § 3553(a) – provide the most concrete yardstick against which to measure what would be reasonable. Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review. See Section 3553(c) (mandating consideration of the Guidelines); Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reason in the judgment and commitment order).

Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances. In this case, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing. Therefore, the government respectfully recommends that the Court sentence defendant according to the Guidelines. Within that framework, the government defers to the Court as to the appropriate sentence.

## IV. RECOMMENDATION

Defendant pled guilty to a scheme involving a pattern of aiding and abetting the receipt of bribes by BTA clerk Tonette Cooks in return for Ms. Cooks overriding unpaid traffic and parking tickets issued by the District of Columbia. Defendant's actions, in conjunction, with Ms. Cooks, caused a loss of revenue to the District of Columbia government in excess of $30,000. This

conduct, with its resulting harm to the District of Columbia government, was serious conduct that needs to be adequately punished. Moreover, beyond the financial loss to the District of Columbia government, the corruption of a public service institution itself is a wrong. Corruption by public officials in the District of Columbia, at whatever level, is a serious and, unfortunately, too often recurring matter. Corruption erodes the public confidence in government officials, employees and institutions. Citizens will accept a system they believe operates fairly, but not one that they do not believe does so. Moreover, although most public servants are honest and hard working, their morale is hurt by those who engage in corruption and their reputations suffer.

In this case, the government is requesting that the Court sentence defendant within the resulting sentencing range of 18 to 24 months in Zone D. The government defers to the Court as to the appropriate sentence within the Guidelines. The government also requests that the defendant be ordered to pay $30,000 in restitution to the D.C. Treasurer.

## V. CONCLUSION

WHEREFORE, the government respectfully requests that the Court sentence defendant within the resulting Sentencing Guidelines range after granting him a three-level reduction for acceptance of responsibility, and that the Court order the defendant to pay full restitution.

                                                   Respectfully submitted,

                                                   KENNETH L. WAINSTEIN
                                                 UNITED STATES ATTORNEY
                                                 D.C. Bar Number 451058

By:    [s]_____
          ROBERT BOWMAN
          D.C. Bar Number 417176
          DANIEL P. BUTLER
          D.C. Bar Number 417718
          ASSISTANT U.S. ATTORNEYS
          555 4th Street, N.W.
          Washington, D.C. 20530
          (202) 353-2877 and (202) 353-9431
          Robert.Bowman@usdoj.gov
          Daniel.Butler@usdoj.gov